Filed 6/30/15  P. v. Terra CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C077836 |
| Plaintiff and Respondent, | (Super. Ct. No. 01F03658) |
| v. | |
| GREGORY FRANCIS TERRA, | |
| Defendant and Appellant. | |

Defendant Gregory Francis Terra appeals from the trial court's order denying his Penal Code section 1170.126[1] petition for resentencing because he committed his instant offense, corporal injury to a spouse (§ 273.5, subd. (a)), with an intent to cause great bodily injury.  He contends that he was entitled to a jury trial and proof beyond a reasonable doubt on whether he intended to cause great bodily injury, and the trial court's finding is not supported by substantial evidence.  We affirm.

---

[1] Undesignated statutory references are to the Penal Code.

1

BACKGROUND

We take the facts of defendant's current offense from the order denying the petition for resentencing, which quotes our opinion affirming his conviction (Feb. 5 2013, C040088.)

" 'On May 1, 2001, defendant's wife, Gayle Spano-Terra was home with defendant. . . . Spano-Terra is an alcoholic and drinks a bottle of wine every day. On this occasion, she had drunk a few glasses of wine.

" 'At approximately 2:00 a.m., Spano-Terra called defendant's brother, Gary Terra, and told him defendant had hit her and was trying to choke her. Spano-Terra was yelling and screaming but did not sound like she was drunk. Gary Terra heard defendant say, "Give me the phone" and then the line went dead. Gary Terra called 9-1-1.

" 'Several Sacramento County deputy sheriffs, including Anthony Saika, responded to the call and arrived at the residence around 2:30 a.m. Saika heard a male voice inside the residence yelling in an aggressive manner. Saika knocked on the door several times but no one responded. The officers gained entry by cutting the screen and unlocking the door.

" 'The officers announced their presence and Spano-Terra emerged from the back bedroom saying, " 'I fell, I fell, I fell.' " Her right eye was swollen and bruised and there was blood on the front of her shirt. She appeared to be scared and to have been drinking, although she was not stumbling. Defendant followed her out of the bedroom.

" 'Upon questioning, Spano-Terra stated she had fallen on her face two days earlier. She said she had locked herself out of the residence and fallen while attempting to crawl through a window. However, her eye was progressively closing shut and Saika believed the injury to be recent. She was adamant that defendant had not injured her and pleaded with Saika to take her to jail. The officers continued to question her.

" 'Spano-Terra stated she was having an allergic reaction that was causing her nose to bleed and that she bruised slowly. When one of the officers suggested that

2

defendant had assaulted her, she denied it and stated she would lie to the district attorney if defendant was prosecuted.

" 'Finally, Spano-Terra told the officers she had begun her menstrual period and defendant became angry when she bled on the new sheets. Defendant hit her on the face with the back of his hand. She explained that she had provoked defendant because she was an awful wife and they were under stress. One of the officers noticed holes in the walls and Spano-Terra told him defendant had made the holes a few days earlier. She admitted defendant had pushed her in the past but "never anything like this."

" 'At trial, Spano-Terra testified she did not remember calling Gary Terra, nor recall how she was injured. She said defendant had gone to bed and she had been on the sofa drinking wine. She fell asleep on the sofa and next remembered walking into the bedroom. She sat on the edge of the bed and asked defendant why he had gone to bed without her but did not remember much after that. She did not remember how she had received injuries to her chin/neck area or face. However, she did say she had injured her arm climbing through the window a few days before.

" 'Spano-Terra had been talking to defendant daily prior to trial. She was a little afraid of him and did not want to testify nor wish him incarcerated. She testified that she had flashed back to a previous husband's abuse when she was drinking. She would have told someone defendant had hit her when he had not because of her alcohol consumption.' "

A jury convicted defendant of spousal battery. (§ 273.5, subd. (a).) Defendant admitted three prior strikes and was sentenced to 25 years to life. We affirmed his conviction on appeal.

Defendant filed a petition for resentencing in February 2013. Following briefing from both sides, the trial court found defendant was ineligible for resentencing because he had committed the instant offense with an intent to cause great bodily injury.

3

I

Citing *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] (*Apprendi*), defendant contends he is entitled to a jury trial and the proof beyond a reasonable doubt on the issue of whether he intended to cause great bodily injury during the commission of his current offense. We disagree.

Section 1170.126 allows defendants serving a life term for a third strike to petition for resentencing. (§ 1170.126, subd. (b).) Eligibility for resentencing is initially limited to defendants serving life terms for felonies that are neither serious nor violent. (§ 1170.126, subd. (e)(1).) Other factors can render a defendant ineligible for resentencing. One of the disqualifying factors, as cross-referenced in section 1170.126, subdivision (e)(2), renders an offense ineligible for recall of sentence if "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§ 667, subd. (e)(2)(C)(iii).)

Defendant asserts that the net effect of finding him ineligible for resentencing is that he will serve a longer sentence, so he is therefore entitled to a jury trial and proof beyond a reasonable doubt on this issue.

We recently rejected this argument in another case, finding it based on the mistaken premise that the two strikes sentence is now the presumptive sentence. "Reducing the sentence of an individual like the current petitioner, who is serving a valid sentence imposed more than a decade ago, is not constitutionally compelled; it would be an act of lenity. The trial court takes 'the original sentence as given'; doing so leads to the inevitable determination that section 1170.126 merely provides a limited mechanism within which the trial court may consider a reduction of the sentence below the original term. Section 1170.126, like the statutory mechanism under federal law for a sentencing reduction, is distinguishable from other sentencing proceedings, and the potential

4

reduction of the sentence is narrowly circumscribed by the statute. The result of a proceeding under section 1170.126 may well be that the petitioner's originally imposed, lawful sentence remains undisturbed. Under the circumstances, the trial court's determination of facts that affect whether the defendant will be resentenced does not implicate the right to a jury trial as described in the *Apprendi* cases. [Citation.]" (*People v. Bradford* (2014) 227 Cal.App.4th 1322, 1336; see also *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1302-1303 [*Apprendi* does not apply to dangerousness finding under section 1170.126, as two strikes sentence is not the presumed sentence].)

*Apprendi* applies only when a fact is used to subject a defendant to a greater potential sentence. (*People v. Towne* (2008) 44 Cal.4th 63, 77.) Since an armed finding that disqualifies defendant from resentencing does not increase his sentence, *Apprendi* does not apply.

## II

Defendant asserts there is insufficient evidence to support the trial court's finding that he intended to commit great bodily injury.

We review the trial court's finding that defendant intended to cause great bodily injury for substantial evidence. (*People v. Guilford* (2014) 228 Cal.App.4th 651, 661.) Under this standard, " '[w]e review the whole record in a light most favorable to the [order] to determine whether it contains substantial evidence, i.e., evidence that is credible and of solid value, from which a rational trier of fact could find beyond a reasonable doubt that the accused committed the offense.' [Citation.]" (*Ibid.*)

Defendant hit his wife, causing her eye to swell shut and he tried to choke her. As a result of the attack, she had injuries not only to her eye and face, but to her chin and neck as well. Her shirt was bloody. She was sufficiently in fear from the attack that she was yelling and screaming when she called to get help from defendant's brother.

5

Trying to choke the victim, coupled with another attack that caused bleeding and the victim's eye to swell shut, supports an inference that defendant intended to inflict great bodily injury.  Substantial evidence supports the trial court's finding.

DISPOSITION

The trial court's order is affirmed.


       NICHOLSON     , Acting P. J.


We concur:


     ROBIE          , J.


     MURRAY        , J.